ALFRED FLEET YANDELL, Plaintiff, v. NATIONAL FIREPROOFING CORPORATION; CHESAPEAKE & OHIO RAILWAY COMPANY, A CORPORATION; THE CLINCHFIELD RAILROAD COMPANY, AN UNINCORPORATED OPERATING ORGANIZATION AND PARTNERSHIP COMPOSED OF THE ATLANTIC COAST LINE RAILWAY COMPANY, A CORPORATION, AND THE LOUISVILLE & NASHVILLE RAILWAY COMPANY, A CORPORATION; SEABOARD AIR LINE RAILWAY COMPANY, A CORPORATION; PIEDMONT & NORTHERN RAILWAY COMPANY, A CORPORATION; AND S. P. KESTLER, Defendants; AND NATIONAL FIREPROOFING CORPORATION, Defendant in Cross Action.

(Filed 16 December, 1953.)

1. Carriers § 8—

An initial carrier by rail furnishing a car for moving freight owes to the employees of the consignee, who are required to unload the car, the legal duty to exercise reasonable care to supply a car in reasonably safe condition, so that the employees of the consignee can unload the same with reasonable safety.

2. Same—

A carrier delivering to the consignee for unloading a car received by it from a connecting carrier owes to the employees of the consignee who are required to unload the car the legal duty to make reasonable inspection of the car to ascertain whether it is reasonably safe for unloading, and to repair or give warning of any dangerous condition in the car discoverable by such an inspection.

**3. Same—**

A shipper is under duty so to conduct its business as not negligently to injure another by any agency set in operation by it.

**4. Same—**

A shipper loading a car with actual or constructive knowledge that it is so defective as to be dangerous for unloading is liable to an employee of the consignee, who unloads the car, for injuries received by such employee as a result of such dangerous condition.

**5. Same: Torts § 6—Answer of one defendant held to state cause of action against other defendant joined by it for contribution.**

An employee of the consignee was injured while unloading a freight car as a result of a dangerous condition of the car. In his suit against the initial and delivering carriers and the agent of the delivering carrier charged with the duty of inspecting the car, the delivering carrier and its agent filed a cross action against the shipper for indemnity or contribution upon allegations that the defect in the car causing the injury was obvious to anyone entering it for the purpose of loading it, and that notwithstanding the shipper's actual or constructive knowledge of such defect, the shipper accepted, loaded and sealed the car, and thus authorized the use of a dangerous instrumentality to effect a business end. *Held:* The cross action sufficiently alleges negligence on the part of the shipper concurring with the negligence of the delivering carrier and its agent in failing to make proper inspection of the car and with the negligence of the initial carrier in furnishing the defective car, constituting the shipper a joint tort-feasor within the purview of G.S. 1-240, and therefore the demurrer of the shipper to the cross action was properly overruled.

**6. Negligence § 6—**

Concurrent negligence consists of negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence in producing a single, indivisible injury.

**7. Negligence § 7—**

Mere negligent omission of a person under duty of making inspection to discover and interrupt the result of a dangerous condition caused by the act of another does not constitute an intervening or superseding efficient cause relieving the original actor of liability.

**8. Judgments § 32: Torts § 6—**

Adjudication that plaintiff had failed to state a cause of action against one defendant as a joint tort-feasor does not preclude the other defendant from asserting a cross action against such defendant for contribution.

APPEAL by defendant National Fireproofing Corporation from *Pless, J.,* at March Term, 1953, of MECKLENBURG.

Civil action to recover damages for personal injuries suffered by the employee of the consignee while unloading an allegedly defective boxcar loaded by the consignor, heard upon the demurrer of the consignor to the cross action of the delivering carrier for indemnity or contribution.

The events resulting in this appeal are stated in chronological order and ultimate terms in the numbered paragraphs set forth below.

1. The National Fireproofing Corporation makes clay conduits at its factory in Haydenville, Ohio.

2. The National Fireproofing Corporation sold certain clay conduits to the Southern Bell Telephone & Telegraph Company.

3. Under the contract between them, the clay conduits were to be shipped in a railway boxcar of the closed type from Haydenville to Charlotte, North Carolina, where the boxcar was to be placed on a private siding for unloading by the employees of the Southern Bell Telephone & Telegraph Company.

4. Consequent to this contract, the Chesapeake & Ohio Railway Company, a common carrier by rail, delivered one of its boxcars to the National Fireproofing Corporation at the factory in Haydenville for loading and shipment to the Southern Bell Telephone & Telegraph Company.

5. The National Fireproofing Corporation loaded the boxcar with clay conduits weighing 67,100 pounds, and the boxcar was closed, sealed, and consigned to the Southern Bell Telephone & Telegraph Company at Charlotte.

6. After the boxcar was loaded, closed, sealed, and consigned, it was moved from Haydenville to Charlotte by the following common carriers by rail: Chesapeake & Ohio Railway Company, initial carrier; Clinchfield Railroad Company and Seaboard Air Line Railway Company, intermediate carriers; and Piedmont & Northern Railway Company, delivering carrier.

7. The Piedmont & Northern Railway Company placed the boxcar on the private siding in Charlotte for unloading by the employees of the Southern Bell Telephone & Telegraph Company.

8. The plaintiff Alfred Fleet Yandell and another employee of the Southern Bell Telephone & Telegraph Company broke the seal on the boxcar and attempted to open one of the car doors preparatory to unloading the boxcar for their employer. As they did so, the car door detached itself from the car and fell upon the plaintiff, inflicting upon him substantial personal injuries.

9. The plaintiff brought this action against the National Fireproofing Company, the Clinchfield Railroad Company, the Atlantic Coast Line Railway Company, the Louisville & Nashville Railway Company, the Seaboard Air Line Railway Company, the Piedmont & Northern Railway Company, and S. P. Kestler, the master mechanic of the Piedmont & Northern Railway Company, as defendants to recover the damages resulting from his personal injuries. The plaintiff made the Atlantic Coast Line Railway Company and the Louisville & Nashville Railway Company parties defendant on the theory that they operated the Clinchfield Rail-

road Company as partners. He joined Kestler as a party defendant upon the allegation that Kestler was employed by the Piedmont & Northern Railway Company to discharge the duties devolving upon it as the delivering carrier.

10. The pleadings in this case are numerous and voluminous. Limitations of space and time necessitate the statement of their purport in ultimate rather than specific terms.

11. The complaint undertook to state a single cause of action for negligence against all of the defendants as joint tort-feasors.

12. Each defendant filed a written demurrer challenging the sufficiency of the complaint to state a cause of action against the demurrant.

13. The hearing judge overruled the demurrers of the Chesapeake & Ohio Railway Company, the Piedmont & Northern Railway Company, and S. P. Kestler, and these three defendants filed answers to the complaint within the time appointed by law.

14. The hearing judge sustained the demurrers of the National Fireproofing Corporation, the Clinchfield Railway Company, the Atlantic Coast Line Railway Company, the Louisville & Nashville Railway Company, and the Seaboard Air Line Railway Company. The plaintiff did not move to amend his complaint, and judgments were entered dismissing the action as to these five defendants.

15. Subsequent to the dismissal of the plaintiff's action as to the National Fireproofing Corporation, the court, acting on the motion of the Piedmont & Northern Railway Company and S. P. Kestler, entered an order in the cause making the National Fireproofing Corporation an additional party defendant, directing the issuance of a new summons against it, and ordering it "to appear and answer the cross action of defendants Piedmont & Northern Railway Company and S. P. Kestler."

16. At the time of the entry of the order mentioned in the preceding paragraph, the Piedmont & Northern Railway Company and S. P. Kestler filed a joint answer in the cause, denying the validity of the cause of action asserted against them by the plaintiff, and pleading contributory negligence on the part of the plaintiff as an affirmative defense. They also incorporated in their answer a cross action against the National Fireproofing Corporation and the Chesapeake & Ohio Railway Company, which covers approximately ten pages of the record on this appeal and makes specific factual averments as the avowed basis for the prayers of the Piedmont & Northern Railway Company and S. P. Kestler for relief in the alternative over against the National Fireproofing Corporation and the Chesapeake & Ohio Railway Company by way of indemnity or contribution in case the plaintiff obtains judgment against the Piedmont & Northern Railway Company and S. P. Kestler on the cause of action pleaded against them in the complaint.

17. Pursuant to the order mentioned in paragraph 15, a new summons was issued and served upon the National Fireproofing Corporation, which appeared and demurred in writing to the cross action of the Piedmont & Northern Railway Company and S. P. Kestler against it.

18. The demurrer of the National Fireproofing Corporation asserts, in essence, that the allegations of the cross action do not state facts sufficient to subject it to liability to the Piedmont & Northern Railway Company and S. P. Kestler for either indemnity or contribution in case the plaintiff recovers judgment against the Piedmont & Northern Railway Company and S. P. Kestler on the cause of action stated against them in the complaint.

19. Judge Pless overruled the demurrer, and the National Fireproofing Corporation appealed, assigning that ruling as error. The only parties participating in the appeal are the Piedmont & Northern Railway Company, S. P. Kestler, and the National Fireproofing Corporation.

*W. S. O'B. Robinson, Jr., and W. B. McGuire for defendants Piedmont & Northern Railway Company and S. P. Kestler, appellees.*

*Helms & Mulliss and Garland & Garland for defendant National Fireproofing Corporation, appellant.*

ERVIN, J. The only question arising on this appeal is whether Judge Pless erred in overruling the demurrer of the National Fireproofing Corporation to the cross action of the Piedmont & Northern Railway Company and S. P. Kestler.

The National Fireproofing Corporation makes these assertions by this demurrer:

1. That the allegations of the cross action do not state facts sufficient to subject the National Fireproofing Corporation to liability to the Piedmont & Northern Railway Company and S. P. Kestler for either indemnity or contribution in case the plaintiff recovers judgment against the Piedmont & Northern Railway Company and S. P. Kestler upon the cause of action for actionable negligence alleged against them in the complaint.

2. That the former judgment sustaining the former demurrer of the National Fireproofing Corporation to the complaint constitutes an estoppel by judgment, barring the Piedmont & Northern Railway Company and S. P. Kestler from prosecuting their cross action against the National Fireproofing Corporation.

The demurrer rests its first assertion upon two theories, which are alternative in character. It asserts primarily that the allegations of the cross action do not disclose the breach of any duty owed by the National Fireproofing Corporation to the plaintiff, and that consequently they fail

to charge the National Fireproofing Corporation with any negligence whatever. It insists secondarily that although the allegations of the cross action may charge the National Fireproofing Corporation with negligence, they make it affirmatively to appear that negligence on the part of the Chesapeake & Ohio Railway Company, the Piedmont & Northern Railway Company and S. P. Kestler constituted intervening or superseding efficient causes, which insulated the negligence of the National Fireproofing Corporation and exempted it from all legal accountability, either direct or indirect, for the plaintiff's injuries.

In passing on the validity of the first assertion of the demurrer and the theories underlying it, we necessarily look to the relevant rules of law prescribing the duties of carriers and shippers by rail with respect to the employees of consignees who unload railroad cars, all of the factual allegations of the cross action, and such of the factual averments of the complaint as charge the Piedmont & Northern Railway Company and S. P. Kestler with actionable negligence.

An initial carrier by rail, which furnishes a car for moving freight, owes to the employees of the consignee, who are required to unload the car, the legal duty to exercise reasonable care to supply a car in reasonably safe condition, so that the employees of the consignee can unload the same with reasonable safety. *Copeland v. Chicago, B. & Q. R. Co.,* 293 F. 12; *Missouri Pac. R. Co. v. Armstrong,* 200 Ark. 719, 141 S.W. 2d 25; *Powell v. Pacific Naval Air Base Contractors,* 92 Cal. App. 2d 629, 209 P. 2d 631; *Atlanta & W. P. R. Co. v. Creel,* 77 Ga. App. 77, 47 S.E. 2d 762; *Jackson v. Chicago, M. St. P. & P. R. Co.,* 238 Iowa 1253, 30 N.W. 2d 97; *Louisville & N. R. Co. v. Freppon,* 134 Ky. 650, 121 S.W. 454; *Corbett v. New York C. & H. R. R. Co.,* 215 Mass. 435, 102 N.E. 648; *D'Almeida v. Boston & M. R. R.,* 209 Mass. 81, 95 N.E. 398, Ann. Cas. 1913C, 751; *Ladd v. New York, N. H. & H. R. Co.,* 193 Mass. 359, 79 N.E. 742, 9 L.R.A. (N.S.) 874, 9 Ann. Cas. 988; *Parker v. Grand Trunk Western R. Co.,* 261 Mich. 293, 246 N.W. 125; *Stoutimore v. Atchison, T. & S. F. Ry. Co.,* 338 Mo. 463, 92 S.W. 2d 658; *Allen v. Larafee Flour Mills Corporation,* 328 Mo. 226, 40 S.W. 2d 597; *Dominices v. Monongahela Connecting R. Co.,* 328 Pa. 203, 195 A. 747; 75 C.J.S., Railroads, section 924. See, also, the cases collected in this annotation: 152 A.L.R. 1313. A delivering carrier by rail, which delivers to the consignee for unloading a car received by it from a connecting carrier, owes to the employees of the consignee, who are required to unload the car, the legal duty to make a reasonable inspection of the car to ascertain whether it is reasonably safe for unloading, and to repair or give warning of any dangerous condition in the car discoverable by such an inspection. *Erie R. Co. v. Murphy,* 108 F. 2d 817, 126 A.L.R. 1093; *Missouri Pac. R. Co. v. Sellers,* 188 Ark. 218, 65 S.W. 2d 14; *Chicago, R. I. & P. Ry. Co. v.*

*Lewis,* 103 Ark. 99, 145 S.W. 898; *Butler v. Central of Ga. Ray Co.,* 87 Ga. App. 492, 74 S.E. 2d 395; *Atlanta & W. P. R. Co. v. Creel, supra; Roy v. Georgia R. & Banking Co.,* 17 Ga. App. 34, 86 S.E. 328; *Ruiz v. Midland Valley R. Co.,* 158 Kan. 524, 148 P. 2d 734, 152 A.L.R. 1307; *Folsom v. Lowden,* 157 Kan. 328, 139 P. 2d 822; *Willis v. Atchison, T. & S. F. Ry. Co.,* 352 Mo. 490, 178 S.W. 2d 341; *Markley v. Kansas City Southern Ry. Co.,* 338 Mo. 436, 90 S.W. 2d 409; *Griffin v. Payne,* 95 N. J. Law 490, 113 A. 247; *Spears v. New York Cent. R. Co.,* 61 Ohio App. 404, 22 N.E. 2d 634; *Ambrose v. Western Md. Ry. Co.,* 268 Pa. 1, 81 A. 2d 895; 75 C.J.S., Railroads, section 924. See, also, the cases collected in this annotation: 126 A.L.R. 1095.

Since it is not engaged in operating a railroad, the law does not put on the shipper of freight the specific duties owing by carriers by rail to the employees of a consignee who unload railroad cars. But it does lay on the shipper the general duty so to conduct its business as not negligently to injure another by any agency set in operation by it. *Council v. Dickerson's, Inc.,* 233 N.C. 472, 64 S.E. 2d 551; 65 C.J.S., Negligence, section 4.

While diligent search by counsel and court fails to unearth a single decision dealing with the exact factual situation presented by the pleadings in this case, violations of its general duty not to injure another by a negligent act are adjudged sufficient under somewhat similar circumstances to impose legal liability upon shippers loading railroad cars for resultant personal injuries to others. It is held, for example, that where the carrier is negligent in furnishing a defective car to the shipper, and the shipper in turn is negligent in furnishing it to his employee to be loaded, the carrier and the shipper are both liable to the injured employee; for the proximate cause of the injury is the defective car. *Chesapeake & O. Ry. Co. v. Cochran,* 22 F. 2d 22; *Waldron v. Director General,* 266 F. 196; *Markley v. Kansas City Southern R. Co., supra;* 44 Am. Jur., Railroads, section 433. It is settled, moreover, that where the carrier furnishes a proper car to the shipper for loading, and the shipper loads it in a negligent manner, the shipper is liable for injuries caused by his negligence to an employee of the consignee who undertakes to unload the negligently loaded car. *Wintersteen v. National Cooperage & Woodenware Co.,* 361 Ill. 95, 197 N.E. 578. See, also, in this connection: 74 C.J.S., Railroads, section 371.

In our judgment, there is no distinction in principle in so far as the shipper is concerned between these rulings and a case where the shipper loads a railroad car with actual or constructive knowledge that it is so defective as to be dangerous for unloading and in that way causes injury to an employee of the consignee who undertakes to unload it. Our opinion on this score is in harmony with that of the writers of the American Law Institute's Restatement of the Law of Torts, who give us this supposititious

case by way of illustration: "The A Coal Company sells coal to B. Company, a factory owner, to be delivered on the private siding of the B Company by the C Railroad Company. The cars are supplied by the C Company. A reasonably careful inspection made while the cars are being loaded by the A Company would have disclosed a defect which made the cars dangerous for unloading. D, an employee of the B Company, while unloading the cars on B's private siding is hurt because of this defect. The A Company is liable to D, although the B Company is regarded as under a duty, before turning the car over to its employees for unloading, to make an inspection which would have disclosed the defect." Am. Law Inst., Restatement of the Law of Torts, Vol. 2, Section 393.

It would unduly prolong this opinion without accomplishing any compensating good to analyze in detail all of the factual allegations of the cross action, and such of the factual allegations of the complaint as charge the Piedmont & Northern Railway Company and S. P. Kestler with actionable negligence. When these allegations are reduced to ultimate averments, they recount the events enumerated in paragraphs 1 to 9, both inclusive, of the statement of facts, and these additional matters:

1. From the time of its delivery to the National Fireproofing Corporation by the Chesapeake & Ohio Railway Company for loading until the plaintiff's injury, the boxcar involved in this litigation was defective in that a number of the vertical steel beams, which were designed to hold its wooden framework and parts in place, were broken. As a consequence, there was a likelihood that the doors of the boxcar would escape from their fastenings and fall upon anyone who attempted to open them when the framework and wooden parts of the boxcar were displaced in any degree by a heavy load. The defective condition of the boxcar was obvious to those who had occasion to enter the boxcar for the purpose of loading it, and to those who were experienced in operating freight trains.

2. At the times of handling and loading the boxcar, both the Chesapeake & Ohio Railway Company and the National Fireproofing Corporation either actually knew, or by the exercise of reasonable care would have known, that the boxcar was dangerous for unloading because of its defective state, and that in consequence any employee of the Southern Bell Telephone & Telegraph Company who undertook to open either of its doors preparatory to unloading it was likely to suffer personal injury.

3. Despite its actual or constructive knowledge of the danger to which its conduct in such respects exposed those who might be called upon to unload the defective boxcar, the Chesapeake & Ohio Railway Company furnished the defective boxcar to the National Fireproofing Corporation for loading with 67,100 pounds of clay conduits, and sealed, consigned, and moved the same after it had been so loaded to the line of the next connecting carrier to the end that the heavily laden boxcar should be

placed on the private siding in Charlotte for unloading by the employees of the Southern Bell Telephone & Telegraph Company.

4. Despite its actual or constructive knowledge of the danger to which its conduct in such respects exposed those who might be called on to unload the defective boxcar, the National Fireproofing Corporation accepted the defective boxcar from the Chesapeake & Ohio Railway Company, loaded it with 67,100 pounds of clay conduits, and authorized its use by the Chesapeake & Ohio Railway Company, the intermediate carriers, and the Piedmont & Northern Railway Company for conveying the clay conduits to the private siding in Charlotte so that the clay conduits could be removed from the defective boxcar at that place by the employees of the Southern Bell Telephone & Telegraph Company.

5. Although a reasonable inspection of the boxcar would have revealed its defective condition and enabled them to remedy the defects or give appropriate warning of their existence in time to have averted the subsequent injury to the plaintiff, the Piedmont & Northern Railway Company, as the delivering carrier, and its chief mechanic, S. P. Kestler, who was employed to perform the duties devolving upon it as delivering carrier, failed to make a reasonable inspection of the boxcar before placing it in its defective state on the private siding in Charlotte for unloading by the employees of the Southern Bell Telephone & Telegraph Company.

6. The act of the Chesapeake & Ohio Railway Company in furnishing the defective boxcar, the act of the National Fireproofing Corporation in loading and authorizing the use of the defective boxcar, and the failure of the Piedmont & Northern Railway Company and S. P. Kestler to make a reasonable inspection of the defective boxcar combined to cause the injury suffered by the plaintiff when he undertook to open one of the doors of the boxcar preparatory to unloading the clay conduits for his employer, the Southern Bell Telephone & Telegraph Company.

These allegations refute the first assertion of the demurrer. They charge that the National Fireproofing Corporation authorized the use of a dangerous instrumentality to effect a business end, and in that way negligently exposed the plaintiff to imminent peril. They aver, moreover, that concurrent negligence of the Chesapeake & Ohio Railway Company, the National Fireproofing Corporation, the Piedmont & Northern Railway Company, and S. P. Kestler combined proximately to cause a single, indivisible injury to the plaintiff. This being true, the claim of the Piedmont & Northern Railway Company and S. P. Kestler for contribution from the National Fireproofing Corporation finds full sanction in the provisions of the statute now codified as G.S. 1-240.

The soundness of our conclusion in respect to the sufficiency of the allegations to charge concurrent negligence becomes manifest when due heed is paid to the legal concept embodied in that term. Concurrent

negligence consists of negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence in producing a single, indivisible injury. *Garbe v. Halloran,* 150 Ohio St. 476, 83 N.E. 2d 217. According to the allegations, the plaintiff would not have suffered harm if the Chesapeake & Ohio Railway Company had not negligently furnished the defective boxcar, or if the National Fireproofing Corporation had not negligently loaded and authorized the use of the defective boxcar, or if the Piedmont & Northern Railway Company and S. P. Kestler had not negligently failed to make a reasonable inspection of the defective boxcar. *Miller v. Board of Education,* 291 N.Y. 25, 50 N.E. 2d 529; *Tawney v. Kirkhart,* 130 W. Va. 550, 44 S.E. 2d 634.

To be sure, the allegations warrant the inference that the negligence of the National Fireproofing Corporation in loading and authorizing the use of the defective boxcar would not have resulted in any harm to the plaintiff if the Piedmont & Northern Railway Company and S. P. Kestler had not failed to make a reasonable inspection of the defective boxcar. This circumstance does not impair the validity of our conclusion in respect to the sufficiency of the allegations to charge concurrent negligence. This is so because the mere negligent omission of the Piedmont & Northern Railway Company and S. P. Kestler to interrupt the result of the National Fireproofing Corporation's negligence did not amount to an intervening or superseding efficient cause relieving the National Fireproofing Corporation from liability. *Georgia Power Co. v. Kinard,* 47 Ga. App. 483, 170 S.E. 688; *Miller v. Board of Education, supra; Erie County United Bank v. Beck,* 73 Ohio App. 314, 56 N.E. 2d 285; 38 Am. Jur., Negligence, section 72; 65 C.J.S., Negligence, section 111. The writers of the American Law Institute's Restatement of the Law of Torts lay down the controlling rule on this aspect of the controversy in this wise: "Failure of a third person to perform a duty owing to another to protect him from harm threatened by the actor's negligent conduct is not a superseding cause of the other's harm." They add this comment: "The third person's failure to perform his duty in this respect makes him concurrently liable with the negligent actor for any harm which results from the actor's negligence and which would have been prevented by the performance of the third person's duty." Am. Law Inst., Restatement of the Law of Torts, Vol. 2, Section 452.

The second assertion of the demurrer lacks validity for reasons fully stated in the recent case of *Canestrino v. Powell,* 231 N.C. 190, 56 S.E. 2d 566.

For the reasons given, the judgment overruling the demurrer of the National Fireproofing Corporation is

Affirmed.