Frank J. HUNTER, Plaintiff,

v.

MISSOURI–KANSAS–TEXAS RAIL-
ROAD COMPANY, a corporation, and
St. Louis-San Francisco Railway Com-
pany, a corporation, Defendants.

MISSOURI–KANSAS–TEXAS RAIL-
ROAD COMPANY, a corporation, a De-
fendant and Third-Party Plaintiff,

v.

HALLIBURTON COMPANY, a corpora-
tion, Third-Party Defendant.

Civ. No. 6163.

United States District Court
N. D. Oklahoma.

Nov. 30, 1967.

Clem H. Stephenson, Seminole, Okl., Roehm A. West, Tulsa, Okl., for plaintiff.

Franklin, Harmon & Satterfield, Oklahoma City, Okl., for defendant St. Louis-San Francisco Railway Co.

William J. Ross, of Rainey, Flynn & Welch, Oklahoma City, Okl., for defendant Missouri-Kansas-Texas Railroad Co.

B. W. Tabor, of Rucker & Tabor, Tulsa, Okl., for defendant Halliburton Co.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

In this case the Plaintiff Frank J. Hunter sues the Defendants Missouri-Kansas-Texas Railroad Company (Katy Railroad) and St. Louis-San Francisco Railway Company (Frisco Railway) for damages as a result of personal injuries received by him on September 11, 1963, while unloading a railroad hopper car at a railroad siding at the bulk cement plant of Halliburton Company situated in Cushing, Payne County, Oklahoma. The Plaintiff has previously recovered Oklahoma Workmen's Compensation benefits from the Halliburton Company. The case at bar is a permissive third party action as provided by the Oklahoma Workmen's Compensation Law. 85 Oklahoma Statutes, 44.

Plaintiff claims that in unloading the railroad car it was necessary for him to move the same a short distance by means of a winch and line furnished him for that purpose by Halliburton Company. Plaintiff further claims that in thus moving the car for unloading purposes it was necessary to either stop or secure the car after movement was begun by use of brakes located on said car, and that in attempting to fix the brakes he fell from the brake platform on the car because of a defective condition in the brakes, falling to the ground and receiving the injuries sustained when the railroad car rolled over one of his legs.

The Plaintiff claims herein that the Defendant Katy Railroad was guilty of violating the duty owed him pursuant to provisions of the Federal Safety Appliance Act, 45 U.S.C. § 11, which prohibits

said Defendant from using on its line a railroad car in a defective condition and aside from the duty prescribed in said Act the Plaintiff also claims that the Defendant Katy Railroad was guilty of common law negligence against him in failing to exercise ordinary care under the circumstances to keep said railroad car in a reasonably safe condition for unloading. Plaintiff claims that the alleged violation of the Act and common law negligence consisted of the Defendant Katy Railroad delivering to Halliburton Company for unloading a railroad car with defective brakes brought about by a missing key pin in the braking mechanism.

As to the Defendant Frisco Railway the Plaintiff claims that this Defendant was guilty of common law negligence against him in failing to exercise ordinary care under the circumstances to keep its railroad car in a reasonably safe condition and delivering the same to the Defendant Katy Railroad in a defective condition, which railroad car the Katy Railroad subsequently delivered to the Halliburton Company. The defective condition in the railroad car asserted against this Defendant is the same defective condition as set out above in connection with the other Defendant.

The Defendant Katy Railroad denies that the Safety Appliance Act applies to it in the circumstances of this case, and further denies that it was guilty of common law negligence as claimed by the Plaintiff. The Defendant Katy Railroad also claims that the Plaintiff was guilty of negligence constituting either the sole cause or a contributing cau.e of his accident and by reason of either Plaintiff is barred from recovering herein against Katy Railroad. The Defendant Frisco Railway denies that the Plaintiff has a cause of action against it since it did not deliver the car to the Halliburton Company siding; denies it was guilty of common law negligence as asserted by the Plaintiff and further claims that the Plaintiff was guilty of negligence either solely causing or contributing to the cause of his accident.

Katy Railroad as Third Party Plaintiff has filed a Third Party Complaint in the case against Halliburton Company, the Third Party Defendant. In this Third Party Complaint Katy Railroad seeks indemnity against Halliburton Company pursuant to an Industrial Lease entered into between Katy Railroad and Halliburton Company by which certain property was leased by Katy Railroad to Halliburton Company which included the railroad siding where the Plaintiff's accident involved herein was sustained. Katy Railroad in said Third Party Complaint asserts that if Plaintiff recovers herein against it, then in such event Katy Railroad is entitled to recover said amount plus its legal and other expenses in indemnity from Halliburton Company by reason of the provisions of Article II, Paragraph 5 of said Lease.[1]

Halliburton Company by way of defense to said Third Party Complaint claims that Article II, Paragraph 5, of said Lease is void as being against public policy; that Katy Railroad was guilty of no negligence in connection with Plaintiff's injury and by reason thereof indemnity is not in order; and lastly that if Katy Railroad is guilty of negligence in connection with the injury sustained by the Plaintiff herein then Katy Railroad was the sole and only one guilty of negligence in connection with said injury

1. Article II, Paragraph 5 of said Lease provides:

"5. To assume the risks of injury to or death of himself and of any person or persons in his employ, or any person who may be upon or about said leased premises at the instance, license or invitation of Lessee (Halliburton Company) or his employees, unless such injury or death be caused solely and directly by the negligence of Lessor (Katy Railroad), its agents, servants or employees, and to pay, satisfy and discharge all legal liabilities, and protect, indemnify and save harmless Lessor from and against all claims or demands or suits or actions, growing out of any such injury or death the risk of which is herein assumed by Lessee."

and is therefore not entitled to indemnity against Halliburton Company under provisions to that effect contained in said Lease. All parties waived jury trial herein.

The Plaintiff has contended herein that he was employed by the said Katy Railroad at the time he received said injury. However, at an evidentiary hearing conducted herein in connection with the removal of this case to this Court from the State Court, the Court determined that the Plaintiff was not an employee of the Katy Railroad at the time of the accident, but rather was an employee of Halliburton Company. See Hunter v. Missouri-Kansas-Texas Railroad Company, (W.D.Okl., 1966) 258 F. Supp. 20.

The Court finds from the evidence herein that the hopper car involved was owned by the Defendant, Frisco Railway. The car was moved from Tulsa, Oklahoma, by Frisco Railway as a part of one of its trains leaving that location. Frisco Railway transferred the car to Katy Railroad at Hallet, Oklahoma, which is located approximately 23 miles east of Cushing, Oklahoma. The Katy Railroad after taking possession of the car at Hallet moved the same to Cushing, Oklahoma, where on September 9, 1963, it spotted said car coupled with a similar type hopper car owned by Katy Railroad at the Halliburton Company siding. Both cars were loaded with bulk cement and were to be unloaded at that location by Halliburton Company. On September 11, 1963, the Plaintiff unloaded the Katy Railroad hopper car which had been spotted over the loading chute situated between the tracks, then uncoupled this car from the Frisco Railway car and moved the Katy car by winch line several hundred feet to the south. In moving the Katy car the Plaintiff was required to first uncouple the same, release its brakes, then move the same with the winch line and set its brakes at its new location to the south. The Plaintiff then undertook to move the Frisco hopper car with the winch line. He pulled the same

to the south from which location the car, of its own momentum due to the downgrade of the tracks to the north, would roll to the north and over the loading chute. The Plaintiff testified that when the car was thus rolling to the north he climbed up to the brake platform and while using both hands on the brake wheel to set the brakes he fell from the brake platform to the ground under the car and sustained his injury when the car ran over one of his legs just above the ankle. The Court finds that this car was equipped with a safety bar or rail on the top of the car situated near the brake wheel which was placed in this location for the purpose of being held by one hand while the brake wheel was manipulated by the other hand and that this was standard procedure for handling the brake wheel. The Court finds from the Plaintiff's own testimony that he did not make use of the safety bar or rail with one hand while he manipulated the brake wheel with the other but rather used both hands in moving the wheel, in which operation he fell from the brake platform as aforesaid. After the accident the Plaintiff's severed foot was found near the loading chute and the railroad car was found on to the north down the grade where some three or four hundred feet away it derailed itself by a derailing device on the tracks and then traveled some six feet off the track with all four wheels on the north end of the car leaving the tracks. The attached winch line was taken down the tracks with the car and had come off the winch spool. The next morning an inspection of the derailed car disclosed a missing key pin from the top rod, both of which are part of the braking mechanism. A shiny place was found on an axle of the train situated just below the normal position of the top rod. A key pin was found after the accident to the south of the loading chute next to or in between the tracks. The above factual findings of the Court are undisputed from the evidence. In addition, it is undisputed that the brakes on the car would not operate with the key pin missing.

The evidence, however, is conflicting as to whether the top rod could bear on the axle and shine the same with the key pin missing. Also there is some question as to when the key pin came out, for the testimony of the train crew was to the effect that the brakes were set on the Frisco hopper car when they spotted it at the Halliburton Company siding two days before the accident. As stated above, if the key pin was then missing the brakes could not have been set. It was the evidence from the train crew that in spotting cars they always set the brakes on all cars which are spotted even though coupled together. The evidence is undisputed that the Plaintiff using the winch line had moved the Frisco hopper car. If the key pin was missing at that time, the Plaintiff should have discovered defective brakes when he undertook to release the same before moving the car by winch line. If he learned this at that time, if such was then the condition of the brakes, it would have been improper for him to later mount the brake platform and attempt to set the brakes, or for that matter even to attempt to move the car on a downgrade track without the car having workable brakes. The Plaintiff was asked if he released the brakes on the Frisco car before he undertook to move the same with the winch line and his answer was that he could not recall whether he did or not. If the key pin was not missing and came out when he was attempting to set the brakes just before his accident, then it is difficult to explain how the shiny spot was made on the axle, which the Plaintiff's evidence indicated would require several hundred miles of travel. In any event, the Court finds the Plaintiff to have been guilty of contributory negligence in connection with the accident, by either mounting the brake platform and attempting to set the brakes while the car was moving with knowledge that the brakes were not in working condition or without this knowledge by failing to make use of the safety bar or rail, disregarding the same and using both hands to move the brake wheel on a moving train while standing eight feet above the ground on a small brake platform which had no railings of any kind. The Court therefore finds and concludes from a preponderance of the evidence that the Plaintiff himself by his own negligence contributed to the cause of the accident and subsequent injury.

The Court will first consider whether or not under the undisputed evidence of this case the Plaintiff has established a cause of action against the Defendant Frisco Railway. There appears to be a conflict among the cases and the states as to whether only the ultimate delivering carrier, here Katy Railroad, is liable with reference to a defective railroad car which causes an injury to an employee of the consignee of the car or if a nondelivering or initial carrier such as Frisco Railway, in this case, may also be liable if at some point it moved or delivered to the ultimate delivering carrier a defective car which subsequently caused an injury to an employee of an unloading consignee. See 152 A.L.R. 1313. Oklahoma does not appear to have passed on this question but the State of Kansas has in Ruiz v. Midland Valley R. Co. (1944) 158 Kan. 524, 148 P.2d 734, 152 A.L.R. 1307, to the effect that only the ultimate delivering carrier is liable. In these circumstances, the Court must decide which rule the Oklahoma Supreme Court would adopt. The Court feels that the better rule is that adopted by the State of Kansas and this is the rule which this Court feels the Oklahoma Supreme Court would adopt. Under this rule only the ultimate delivering carrier of a defective railroad car is liable to an employee of an unloading consignee and liability does not extend to a non-delivering carrier. The rationale of this rule is said to be that the negligence of the ultimate delivering carrier in failing to meet its duty to inspect the defective car which caused the injury, breaks the causal connection between the negligence of the initial carrier and the injury and is therefore the proximate cause thereof, or, that after

the initial carrier has delivered the defective car to another carrier, it thereby loses control over it and its duty with respect to such car thereupon ceases. Thus, by the application of this rule of law to the facts of this case the Plaintiff has not established a cause of action against the Defendant Frisco Railway and judgment should be entered in favor of Frisco Railway against the Plaintiff dismissing said action against it. Moreover, if the rule holding a non-delivering carrier also liable should be applied a judgment should still be entered in favor of Frisco Railway by reason of Plaintiff's contributory negligence as set out above which bars his recovery against Frisco Railway on the common law negligence count.

▆▆▆▆ In treating with the Plaintiff's action against the Katy Railroad, the Court will first note that Katy Railroad has asserted herein that the Federal Safety Appliance Act does not apply to it in this case because the accident and injury to the Plaintiff did not occur on its line but rather occurred on a line belonging to the Halliburton Company by virtue of the aforementioned Industrial Lease between them. The Court entered an Order herein with reference to this facet of the case and by such Order reserved final ruling on this controversy until all the evidence of the case has been received.[2] With all the evidence now be-

---

2. This Order is as follows:

"ORDER

The Defendant and Third Party Plaintiff, Missouri-Kansas-Texas Railroad Company (Katy) has filed a Motion for Judgment on the Pleadings or for Partial Summary Judgment against the Plaintiff pursuant to Rules 12(b) (6), 12(c) and 56, F.R.Civ.P., 28 U.S.C.A.

The Movant has incorporated by reference certain evidence and documents other than the pleadings herein and the Court must therefore treat the Motion as one for Partial Summary Judgment pursuant to Rule 56. Royal Crown Cola Co. v. Crown Beverage Corporation, 195 F.Supp. 130 (E.D.N.Y.1961); United States v. Newmont Mining Corp., 34 F.R.D. 504 (S.D.N.Y.1964).

In essence, Katy urges that the Plaintiff is limited to a common law negligence cause of action against it because the Safety Appliance Act, 45 U.S.C. § 1 et seq., requires that the defective railroad car be in its control or use and on its line at the time of the accident complained of. In support of this contention the Katy relies, inter alia, on the Court's Order of September 2, 1966, pursuant to the evidentiary hearing on Plaintiff's Motion to Remand of August 30, 1966, and the following case authority: Riseberg [Risberg] v. Duluth, Missabe & Iron Range [Railway] Co., [233 Minn. 396] 47 N.W.2d 113 (Minn.) and the companion case of Paul v. Duluth, Missabe & Iron Range Ry. Co., 96 F.Supp. 578 (D.Minn.1950), as well as Patton v. Baltimore & Ohio Rd. Co., 197 F.2d 732 (Third Cir. 1952).

Title 45 U.S.C. Section 11 provides that railroad equipment is within the purview of the Safety Appliance Act when it is being used " * * * to haul, or permit to be hauled or used on its line, * * *."

The above cases cited by the Defendant, Katy, in support of its Motion involved situations where the industry concerned owned trackage within its plant complex and moved the railroad car which had been spotted by the railroad with its own engine and crew on its own trackage, with an injury then occurring. The cases appear to turn on the proposition that the railroad car involved was not being used on the line of the railroad company at the time of the injury, but rather was being used on the line of an industry which was moving the same with its own equipment and personnel. In addition, it is indicated in Paul, supra, that if the car was in defective condition when delivered to industry by the railroad company, the Safety Appliance Act may apply.

In Monongahela Railway Company v. Black, 235 F.2d 406 (Fourth Cir. 1956) the Court distinguished the case of Patton v. Baltimore & Ohio Rd. Co., supra, and held that a railroad is not relieved of its responsibility to provide safe appliances when it places one of its cars on a side track for the sole purpose of having it loaded with freight to be hauled by it. In Barney v. Staten Island Rapid Transit Co., 316 F.2d 38 (Third Cir. 1963) cert. denied 375 U.S. 826 [84 S.Ct. 67, 11 L.Ed.2d 58] (1963), the Court held that the Safety Appliance Act was applicable to the Railroad Company where a car was standing on a siding owned by a manufacturing company in an action brought by an employee of the

fore the Court, the Court finds that the railroad siding at the Halliburton Company plant where the Plaintiff's accident and injury occurred is a line of the Defendant, Katy Railroad, within the meaning of the Federal Safety Appliance Act, 45 U.S.C. § 11. This determination is made by reason of the provisions of the Industrial Lease whereby the Katy Railroad has very definite rights and controls with reference to this siding,[3] the type and extent of handling the railroad cars by the Halliburton Company and adherence to the case of Barney v. Staten Island Rapid Transit Co., 316 F. 2d 38 (Third Cir. 1963), cert. denied 375 U.S. 826, 84 S.Ct. 67, 11 L.Ed.2d 58 (1963).

On the basis of the above holding and now with further reference to Plaintiff's action against the Defendant Katy Railroad and finding that it de-

livered the Frisco Railway hopper car to the Halliburton Company siding and spotted the same with defective brakes and that the Katy Railroad thereby violated the Federal Safety Appliance Act and was also guilty of common law negligence in either failing to make a proper inspection of the car upon delivering the same to its consignee or in spotting the same at the siding with defective brakes without warning the consignee of such condition on the car, the Court must determine whether or not contributory negligence on the part of the Plaintiff in the act of unloading the car would bar his recovery under either the Safety Appliance Act count or the common law negligence count, or both. It is clear that contributory negligence on the part of the Plaintiff would bar his recovery under Oklahoma law on the common law negligence counts against both railroads.

manufacturing company who allegedly sustained injuries because of a defective dome ladder on the car. It is well settled that the benefits of the Safety Appliance Act have been extended to persons other than employees of railroads. Fairport P. & E. R. Co. v. Meredith, 292 U.S. 589, 54 U.S. 826, 78 L.Ed. 1446.

We are thus now involved with factual questions as to whose line the car was on when the injury occurred and if the car was in defective condition when delivered to the siding by Katy and the legal effect of industry undertaking to move the car a few feet with an electric winch versus movements of cars by engines with crews. A dispute exists with reference to whether the injury was received on the line of the Defendant Katy, or the line of the Third Party Defendant, Halliburton Company. The Defendant, Katy, takes the position that the line belonged to Halliburton Company per lease agreement between them, whereas the Plaintiff claims that the Defendant, Katy, had substantial rights regarding the line as shown by said lease agreement itself and it must be considered to be its line for the purpose of the Safety Appliance Act. The courts have considered control, rather than ownership, the criterion for determining whether the track involved was a part of the railroad's lines. 96 A.L.R.2d 419 at Section 7, page 433. And it appears from the pretrial hearing herein that a

dispute may exist as to whether the brake was defective when Katy spotted the car on the siding.

The Summary Judgment should be used with caution. The Court is not satisfied that undisputed facts are before the Court from which the Court should conclude and grant summary judgment to the effect that the Safety Appliance Act does not apply in this case to the defendant, Katy. The evidentiary hearing heretofore held in this matter was not conducted with reference to this issue even though some of the testimony received may have some bearing thereon. The Court prefers to consider whether or not the Safety Appliance Act applies to the defendant, Katy, in this case after hearing all the evidence in the light of the adjudicated cases on this point.

Accordingly, the Motion of the defendant, Missouri-Kansas-Texas Railroad Company for Summary Judgment is denied.

It is so ordered this 13 day of September, 1967."

3. Article III, Paragraph 6, of this Lease provides:

"6. Lessor may from time to time enter upon said premises to construct, extend or repair any side or switch track or to perform any duty required of it by law, or to make any use of said premises not inconsistent with the use thereof by Lessee as herein authorized."

However, the Plaintiff contends that contributory negligence on his part may not be considered and is not a bar with reference to a violation of the Federal Safety Appliance Act by the Katy Railroad which caused or contributed to his injury. On the other hand, the Katy Railroad contends that since the Plaintiff was not an employee of the Katy Railroad at the time he sustained his accident and injury, his contributory negligence is a bar to recovery even though the Katy Railroad is guilty of delivering a defective car to the Plaintiff's employer with the defect in the car being a violation of the Federal Safety Appliance Act.

If the Plaintiff had been an employee of Katy Railroad at the time he sustained his accident and injury he would have proceeded against Katy Railroad under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. In these circumstances and by virtue of 45 U.S.C. § 53,[4] the Plaintiff as an employee of the Railroad shall not be held to have been guilty of contributory negligence where the injury resulted from a violation by the carrier of a provision of the Federal Safety Appliance Act. But as previously noted, after an evidentiary hearing as to whether or not the Plaintiff was an employee of Katy Railroad at the time of his accident and injury, the Court has decided herein that the Plaintiff was not an employee of the Katy Railroad at the time he sustained his accident and injury. Hunter v. Missouri-Kansas-Texas Railroad, supra. Katy Railroad cites Hartley v. Baltimore and Ohio Railroad Company, (Third Cir. 1952) 194 F.2d 560, as holding that whereas an employee of

a railroad cannot be held guilty of contributory negligence in connection with a Federal Safety Appliance Act violation, that one employed by a third person or a non-railroad employee such as the Plaintiff here, does not have this benefit and the defense of contributory negligence is available to the railroad carrier. Also, see Fairport, P. & E. Railroad Co. v. Meredith, 292 U.S. 589 at page 598, 54 S.Ct. 826 at page 829, 78 L.Ed. 1446 (1934).

The Plaintiff has presented no case to the contrary, the Court finds none and therefore finds and concludes under the above authorities and in the circumstances of this case where the Plaintiff is not an employee of the Katy Railroad, that the Katy Railroad may assert the defense of contributory negligence with reference to its alleged violation of the Federal Safety Appliance Act and if the Plaintiff is guilty of contributory negligence he may not recover against the Katy Railroad for either any common law negligence on its part or any violation by it of a provision of the Federal Safety Appliance Act.

As stated above, the Court has found from the evidence presented that the Plaintiff was guilty of contributory negligence in connection with the accident and his resulting injury by failing to make use of the safety bar or rail provided for his use and protection when using the brake wheel as well as mounting a moving train and attempting to apply the brakes when he knew or should have known that the brakes were inoperative and defective prior to the time he undertook to move the car with the

4. 45 U.S.C. § 53, is as follows:
   "In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

winch line. Thus, for either or both of these reasons, the Court finds the Plaintiff to have been guilty of negligence contributing to his own fall from the brake platform to the ground and his resulting injury. In view of this finding and the state of the law to the effect that this defense is available in this case to Katy Railroad under both counts against it, namely, a violation of the Federal Safety Appliance Act and common law negligence in delivering a defective car to the Halliburton Company siding for unloading by its employees, the Court finds and concludes that the Plaintiff is, therefore, not entitled to recover herein against Katy Railroad by virtue of said contributory negligence on his part as found by the Court under the evidence.

Since the Katy Railroad is not liable herein to the Plaintiff as above determined, the Third Party Complaint of the Katy Railroad against the Halliburton Company as the Third Party Defendant, should be dismissed as presenting no justiciable issue between them. The claim of Katy Railroad that it is entitled to recover against Halliburton Company for its legal fees and expenses in defending this action is found to be without merit in view of the language of Article II, Paragraph 5 of the Industrial Lease between them which does not create liability for this type of expenditure. See Wagner v. Fireman's Fund Insurance Company (Tenth Cir. 1965), 352 F.2d 410.

The action of the Plaintiff against the Defendant Frisco Railway and the action of the Plaintiff against the Defendant Katy Railroad should both be dismissed and the Third Party action of Katy Railroad against the Third Party Defendant Halliburton Company should also be dismissed, all for reasons heretofore set out. Counsel for Katy Railroad will take the lead in preparing an appropriate judgment or judgments based on the foregoing and present the same to the Court for signature and entry herein.